JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cedric Ross Jordan, | No. CV 09-2668-PHX-DGC (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Delena Carrillo, et al., | |
| Defendants. | |

Plaintiff Cedric Ross Jordan filed this civil rights action under 42 U.S.C. § 1983 against multiple Arizona Department of Corrections (ADC) officials: Deputy Warden Delena Carrillo; Sergeant Reyes; Correctional Officers (II) Gamblin and Valdez; Captain Swanson; Lt. Wilson; Warden William White; and Director Charles Ryan (Doc. #1).[1] Before the Court is Defendants' Motion to Dismiss for failure to exhaust administrative remedies (Doc. #17), which is fully briefed (Doc. ##19, 21-22). The Court will grant Defendants' motion.

**I.    Background**

Plaintiff's claims arose during his confinement in Eyman-Special Management Unit (SMU) I in Florence, Arizona (Doc. #1 at 1). In Count I, Plaintiff alleged that his Eighth Amendment rights were violated when he was housed with two inmates who threatened his

---

[1] Upon screening, the Court dismissed Terraza, Guillen, Dixon, and C.O. II Wilson as Defendants (Doc. #7).

safety and attacked him (id. at 3-3E). In Count II, Plaintiff alleged that his First Amendment rights were violated when Defendants retaliated against him for filing a lawsuit by refusing to move Plaintiff out of the dangerous housing situation (id. at 4). Plaintiff sued for injunctive relief and monetary damages (id. at 6). The Court screened the Complaint and ordered service on Defendants (Doc. #7).

## II. Parties' Contentions

### A. Defendants' Motion

Defendants contend that Plaintiff failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id.). In support, they proffer the affidavit of Cheryl L. Dossett, an ADC Hearing Officer (Doc. #18, Dossett Decl. ¶ 1) and a copy of Department Order (DO) 802, Inmate Grievance Procedure (Doc. #17, Attach. A).

Dossett explains the Inmate Grievance Procedure, which is a four-tiered review process (Doc. #18, Dossett Decl. ¶ 6). She states that an inmate must initially attempt to informally resolve his complaint with staff (id.). If the complaint cannot be resolved, then the first step in the review process requires the inmate to submit an Inmate Letter to his assigned CO III within 10 days of the action causing the complaint; the CO III must investigate the complaint and provide a response (id.). If the issue is unresolved, the inmate proceeds to the second step, which is a Formal Grievance to the Deputy Warden through the CO IV Unit Grievance Coordinator; the Formal Grievance must be submitted within 5 days of receiving the CO III's response (id. ¶ 7). The Deputy Warden must issue a written response within 15 days that indicates a decision—either "resolved" or "not resolved" (id.). If "not resolved," the inmate may proceed to the third step: the First-Level Grievance Appeal to the Warden (id. ¶ 8). The inmate must file this appeal of the Deputy Warden's decision within 5 days of receiving the decision-response (id.). Finally, if the inmate seeks to appeal the Warden's appeal response, he may move to the fourth and final step of the review process: the Grievance Appeal to the Director, which is submitted to the Unit Grievance Coordinator (id. ¶ 9).

Dossett avers that the Inmate Grievance Procedure is designed to address complaints "related to any aspect of institutional life or condition of confinement" that affects inmates, including department orders, procedures, and staff actions (id. ¶ 5). Dossett states that she reviewed the ADC Grievance Appeal Log and Appeal File for the period since January 2009, and found that Plaintiff did not file a single Grievance Appeal to the Director related to the failure-to-protect claim in Count I or the retaliation claim in Count II (id. ¶ 11).

Defendants argue that because Plaintiff failed to appeal any grievances for the claims in this action to the Director, he failed to exhaust his available administrative remedies and the Complaint should be dismissed (Doc. #17 at 6-7).

### B. Plaintiff's Response

Plaintiff responds that he did not exhaust the claim in Count I because under ADC policy, inmates are not allowed to grieve housing issues (Doc. #19 at 2). He asserts that he was thus exempt from the exhaustion requirement (id. at 1-2). In support, he proffers a copy of DO 802, which he states was the only grievance process available to him in SMU I (id.). Plaintiff points to the DO 802 provision that states, "[i]nmates may not use the inmate grievance system for classification, discipline issues or any other system which has its own unique appeal process" (id., Ex. A, DO 802.01 § 1.2.3). Plaintiff submits that he was not permitted to file a grievance for any type of housing issue and he was unaware of any other grievance process available to grieve his claim (id. at 3).

As to Count II, Plaintiff asserts that he exhausted his claim by filing an appeal to the Director, and he attached copies of Inmate Grievances and Appeals and responses from Ryan (id., Attachs. 1-2).[2]

### C. Defendants' Reply

In reply to Plaintiff's claim that he was exempt from the exhaustion requirement for

---

[2] After Plaintiff filed his response, the Court issued an Order with the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of the evidence necessary to successfully rebut Defendants' contentions (Doc. #20). The Order provided Plaintiff with additional time to file an amended response (id.). In response to this Order, Plaintiff re-filed the same response memorandum (Doc. #21).

his claim in Count I, Defendants argue that if Plaintiff's claim was related solely to his housing placement, it must fail because inmates have no right to a particular housing assignment or custody level (Doc. #22 at 1). They maintain, however, the Plaintiff's claim is not a housing-issue claim; rather, it is a failure-to-protect claim under the Eighth Amendment (id. at 2). Defendants state that his claim was grievable under the ADC grievance procedure because it concerned "institutional life or conditions of confinement" affecting Plaintiff; thus, he was required to exhaust the available remedies (id.).

Defendants contend that the grievance evidence that Plaintiff submits in support of Count II relates to claims unrelated to this lawsuit (id.). They note that in his Complaint, Plaintiff alleged that on December 3, 2009, Defendants retaliated against him because he filed a lawsuit (id.). Defendants argue that the two grievances Plaintiff proffers to show exhaustion were initiated well before December 3, 2009; one grievance was first filed on April 20, 2009, and the other was begun on May 27, 2009 (id. at 2-3). Defendants therefore conclude that these grievances are not evidence that he exhausted the claim raised in this lawsuit (id. at 3).

**III.    Exhaustion**

    **A.    Legal Standard**

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). The defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-

20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

   **B.     Analysis**

Defendants must demonstrate that there were remedies available to Plaintiff. See Wyatt, 315 F.3d at 1119; see also Brown v. Valoff, 422 F.3d 926, 936-37 (2005). Defendants submit evidence that a grievance system was available for Plaintiff's claims (Doc. #17, Ex. A, Dossett Decl. ¶¶ 3-9). Plaintiff's own evidence reflects that he was familiar with the grievance procedure (see Doc. #22 at 3; Doc. #17, Attachs. 1-2).

With respect to Count I, Plaintiff is correct that the ADC grievance procedure does not entertain inmate complaints regarding classification or custody level. But Defendants are correct that inmates have no constitutional right to a particular classification and, in any event, Plaintiff presents an Eighth Amendment failure-to-protect claim, which is squarely within the grievable conditions-of-confinement purview. Plaintiff's identification of his claim as a "housing" issue in his Complaint does not convert his claim to an non-grievable issue (see Doc. #1 at 3). See Alvarez v. Hill, 518 F.3d 1152, 1157-1158 (9th Cir. 2008) (a court looks to the facts alleged in a complaint to determine what claims are asserted). Indeed, Plaintiff specifically alleged that Defendants "acted with deliberate indifference in ignoring threats" to Plaintiff and that their actions constituted "cruel and unusual punishment" in violation of the Eighth Amendment (Doc. # 1 at 3D-3E). There is no evidence that Plaintiff tried to grieve this claim and was prevented from doing so, or that he attempted to seek clarification of the availability of the grievance procedure.

Griffin v. Arpaio makes clear that proper exhaustion "means that the grievant must use all steps the prison holds out." 557 F.3d at 1119. Plaintiff acknowledges that he did not exhaust his failure-to-protect claim and he does not demonstrate that he was unable to do so. Defendants have therefore met their burden to establish nonexhaustion of Count I.

Plaintiff's retaliation claim in Count II will also be dismissed for failure to exhaust. The allegations in Plaintiff's Complaint clearly target Defendants' actions on December 3,

2009, when they refused to move Plaintiff from his housing location (Doc. #1 at 4). The dates on Plaintiff's grievance documents show that they address issues that arose in April and May 2009, well before the alleged December 2009 incident (Doc. #19, Attachs. 1-2). Further, the complaints addressed in those grievances involve the denial of recreation and showers and the refusal to provide Plaintiff a complete sack lunch (id.). Thus, Plaintiff's evidence fails to demonstrate that he grieved the retaliation claim in this lawsuit, and Plaintiff submits no grounds justifying the failure to exhaust.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. #17).

(2) Defendants' Motion to Dismiss (Doc. #17) is **granted**.

(3) This action is dismissed without prejudice for failure to exhaust. The Clerk of Court must enter judgment accordingly.

DATED this 23rd day of June, 2010.

_____
David G. Campbell
United States District Judge